### ROSENBLUM v. BLASER et al.

(Supreme Court, Appellate Term. March 5, 1909.)

BILLS AND NOTES (§ 370\*)—BONA FIDE PURCHASER.

> B. had a lease on a basement for a café and restaurant, the lease prohibiting the lessor from renting any other part of the building for the sale of liquors, and K. subsequently leased the remainder of the building and an adjoining building; and B. being informed that a former waiter was to be the occupant of the adjoining building, which was being connected with the building in which B. was located by an opening through a main wall, bought off the possibility of his former waiter's competition by executing notes to K. It did not appear that K. knew of the restriction in B.'s lease as to renting for a liquor business, nor whether the premises adjacent to the building in which B. was located were more closely related to it than contiguous. *Held* that, B. being conversant with all the surroundings, including the restriction in his lease, and choosing to buy his peace rather than depend upon the restriction in his lease to keep away competition, his notes given for that purpose were valid obligations, even in K.'s hands, and K. gave good title to them when he sold them for what he was willing to take and his purchaser to give, for a valuable consideration and before maturity, though the purchaser knew nothing of B. and omitted to inquire.

> [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 370.\*]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.

Action by Max Rosenblum against Frederick Blaser, impleaded. Judgment for defendant Blaser, and plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

Rogers & Rogers (Gustavus A. Rogers and Saul E. Rogers, of counsel), for appellant.

Abr. A. Joseph, for respondent.

MacLEAN, J. Upon the trial counsel for the plaintiff introduced in evidence the two notes upon which this action was brought, practically without opposition; the signatures of Blaser, the maker, and Keller, the indorser, being undisputed, and the protest being admitted in the answer. Had he rested thereupon and upon the attendant presumptions, that the plaintiff was holder of the paper in due course—that is, since before maturity—without notice of any infirmity in the instruments or of defects in the title of the persons negotiating them, in good faith and for value (any consideration sufficient to support a simple contract), and that every person whose signature appeared thereon was party thereto for value, the trial might have been brief, to much saving of costs to the public and to his client. He chose, however, to put upon the stand the plaintiff, who testified that he had received the papers from Keller, the payee and indorser; that at the same time he had gotten five other notes of the same style, falling due on different dates, for $100 each, seven in all, amounting at their face to $700, for $620; and, upon cross-examination, that he

did not know Blaser, knew nothing of him, had never seen him, was ignorant of his financial condition and of his business, or where he kept, and that he for five years had had dealings with Keller, with whom he was friendly in a business way.

Omission to inquire about or communicate with Blaser or concerning the consideration moving to him, and the purchase of the notes for less than their face value, blazed an opening for Blaser's counsel to introduce pages and pages of testimony under cover of dicta in the opinion in Bank of Canajoharie v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676, written by a zealous judge, once a notable advocate, whose homily of piping phrases in 11 solid pages, upon a promissory note case, if taken literally, rather than regarded as bad law made by a hard case, would long since in this state have dwarfed dealings in negotiable instruments and put an end to the commercially useful and reputable business of note brokers. Be the worthiness what it may of that opinion (concurred in by the full bench of the time), the facts presently in question contrasted in epitome with the circumstances of Farmer Diefendorf's trade and the dealing of the bank with his beguiler ("coming redhanded from the perpetration of his fraud") take this case out of the sentimental observations referred to, fortified with extracts, foreign, federal, and domestic, and quotations out of hornbooks from home and abroad, and show without citation of cases that in a commercial community, respecting the law merchant, the judgment herein should have been against the maker as well as against the indorser.

Blaser, the successful defendant, was not a rustic in a rural county, but a practical man, keeping, and who long had kept, a café and restaurant in the basement of the old Prescott House, the "building known as Nos. 529 to 533 Broadway," at the northwest corner of Spring street. Of the premises he occupied he had taken a new lease for five years from May, 1907, containing the clause:

"The lessor agrees not to rent any other part of said building for the sale of liquors."

On January 1, 1908, his codefendant, Keller, a real estate operator, became lessee of the entire premises Nos. 529–533 Broadway, and also of those known as Nos. 95 and 97 Spring street, next west of the Broadway premises. All these parcels of realty belonged to one person, and were demised in one lease to Keller, who, setting about to cut a passage from Broadway through a main wall to a store in No. 97 Spring street, had to buy out the lease of its occupant, a tailor, with a bonus of $1,000. The tailor, hearing that a former waiter of Blaser was to have the store he occupied, told this to Blaser, for whom he made clothes, and of whose café he was a patron, and set Blaser negotiating with Keller to buying off the possibility of his former waiter's competition. He offered $500, and then $50 a month. Keller would not take less than $1,000. Finally Blaser agreed to give him the sum, and paid it in ten notes, of which he paid three, let the fourth go to protest, and defaulted on the fifth. Incidentally the tailor adjusted himself to the alterations and kept his shop, eke his bonus.

Whether the premises known by the Broadway numbers and the premises known by the Spring street numbers were more related than contiguous does not clearly appear; nor does it appear that Keller, though he took the rent, ever knew of the restriction in Blaser's lease of the basement in Broadway, for the lease was not assigned to him. Of all these, however, and of other circumstances and conditions, Blaser must have known, and so made up his own mind whether he had any valid excuse for keeping his former waiter out of business in competition with himself, or whether it were cheaper to buy his peace. Upon this record, the notes Blaser gave were valid obligations in the hands even of Keller, and he gave good title to them when he sold them for what he was willing to take and Rosenblum to give, for a valuable consideration and before maturity. The judgment should be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

GILDERSLEEVE, P. J., concurs in the result.

DAYTON, J. (concurring). The fact that plaintiff bought the notes before maturity without notice of any claimed objection to their validity, and the further fact that No. 97 Spring street remained in possession of Cohen, the tailor, which facts were undisputed, required the trial court to give judgment against the maker of the notes.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.